UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

BRANDA HARRIS,                          :       CASE NO. 5:05-cv-1611
                                        :
            Plaintiff,                  :
                                        :
vs.                                     :       ORDER AND OPINION
                                        :       [Resolving Doc. No. 18]
POSTMASTER GENERAL, U.S. POSTAL         :
SERVICE,                                :
                                        :
            Defendant.                  :
                                        :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this Title VII case, Plaintiff Branda Harris alleges that Defendant Postal Service unlawfully retaliated against her for complaining about discrimination. Specifically, the Plaintiff says that she filed official complaints alleging discrimination and retaliation, and her supervisors retaliated against her by denying her resources and promotions. These actions, she says, ultimately forced her to take early retirement. Responding, the Defendant says that the actions the Plaintiff cites were not retaliation, but legitimate financial and managerial decisions to which other similarly-situated employees were subject.

Before the Court is the Defendant's motion for summary judgment. [Doc. 18.] The Plaintiff opposes the motion. [Doc. 23.] For the reasons that follow, the Court GRANTS the Defendant's motion for summary judgment.

-1-

Case No. 5:05-cv-1611
Gwin, J.

## I. Background

From 1970 to 2003, Defendant United States Postal Service ("Postal Service") employed Plaintiff Branda Harris. She first worked as a mail carrier in Cleveland. She served in that role until 1976, when she transferred to a position in the Cleveland mail distribution center. In 1982, she left the Postal Service and served in the United States Army for four years. In 1986, Harris returned to her role in the Cleveland mail distribution center. In 1988, the Postal Service promoted Harris to a supervisory role at the distribution center. In 1992, she became Postmaster of the post office in Rome, Ohio. In 1994 and 1996, the Postal Service respectively promoted Harris to Postmaster positions in Burton and Madison, Ohio. Harris reports that from the date of her hire through 1999, she generally enjoyed her work. (Harris Dep. Vol. 1 22, 31.)

Harris says that beginning in 2000, when Postal Service administrator Jewelle Hoye became Harris's immediate supervisor, her work experience worsened. Initially, Harris got along well with Hoye, but over time, Harris says that Hoye gave her fewer and fewer resources. (Harris Dep. Vol. 1 31.) During this period, Harris filed a series of Equal Employment Opportunity ("EEO") complaints, the first alleging racial discrimination and the others alleging retaliatory harassment.[1] (Harris Dep. Vol. 1 66.) Harris says the Postal Service began subjecting her to a pattern of adverse actions and hostile treatment in retaliation for filing these complaints.

First, beginning in 2000, Harris says the Postal Service understaffed the Madison Post Office, but that her superiors did not timely address her requests for more staff. Harris says she was concerned that these staffing shortages would decrease the post office's performance and reflect

---

[1] Neither the evidentiary record nor the parties' memoranda indicate the substance of these "EEO complaints" or with what entity they were filed.

Case No. 5:05-cv-1611
Gwin, J.

negatively on her job performance. (Harris Dep. Vol. 1 80-1.) Harris also complains that in 2001 or 2002, her superiors did not select her for participation in the mentoring program, although she had been selected from 1996 through 2000. (Harris Dep. Vol. 1 72.) Instead, Hoye included Harris in the Individual Development Program ("IDP"). However, Harris alleges that the IDP was not designed to improve her skills, but only to demonstrate her shortcomings. (Harris Dep. Vol. 2 107-08.) Moreover, Harris says that Hoye told her that the Postal Service was no longer running the Officer in Charge ("OIC") program[2] or reimbursing college tuition. Harris says that neither of these statements were true. (Harris Dep. Vol. 1 75-76.) Finally, Harris applied for twelve different lateral transfers and promotions, but the Postal Service filled each position with other applicants, some of whom Harris alleges were less qualified than her. (Harris Dep. Vol. 1 88-90.) Four of these were for Postmaster positions in North Carolina; the rest were for positions in Northern Ohio. (*Id.*) Despite the allegations, Harris concedes that from 2000 to 2003, she suffered no pay decrease, her performance appraisals did not worsen, she received no change in job title or responsibility, and no one threatened to remove her from her position. (Harris Dep. Vol. 1 67-68.)

Instead, Harris argues that depleted resources and lack of promotion created an intolerable environment that ultimately forced her to leave her job. (Harris Dep. Vol. 1 76.) Harris says that supervisor Kathy Ainsworth made her intent clear in a note to a subordinate that said: "Deal with [Harris]. I am tired of her whining and complaining. . . . [Harris] needs to quit wasting everyone's time. . . . set up a written response to refute all her allegations." (Ainsworth Dep. 23 (Ainsworth orally reading written note at deposition).) In mid-2003, Harris retired from the Postal Service.

---

[2] The program allowed employees to serve as Postmasters in higher level positions temporarily.

Case No. 5:05-cv-1611
Gwin, J.

On June 14, 2005, Harris filed this law suit. In her Complaint, Harris alleges that she was subjected to retaliatory harassment [Doc. 1.] On May 10, 2006, the Postal Service filed the present motion for summary judgment [Doc. 18], to which Harris filed a Brief in Opposition. [Doc. 23.]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment if the evidence presented shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, the Court shall draw all justifiable inferences from the evidence presented in the light most favorable to the nonmoving party. *Woythal v. TexTenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252 (6th Cir. 1998).

The Sixth Circuit emphasized the showing required to defeat summary judgment in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992). There, the Court stated: "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict . . . ." The "mere possibility" of a factual dispute is not enough. Rather, in order

-4-

Case No. 5:05-cv-1611
Gwin, J.

to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary. Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Id.* at 581 (internal citations omitted). Thus, a judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question.

Using this standard, the Court analyzes the parties' arguments over the present motion.

### III. Discussion

Harris alleges that the Postal Service unlawfully retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2 *et seq.* To establish a prima facie case of retaliation, a Title VII plaintiff must show either by using direct evidence or indirect evidence that her protected conduct caused an adverse employment action. Where a plaintiff uses indirect evidence, a court uses the burden-shifting analysis described below that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Here, Harris relies almost exclusively on indirect evidence to argue that her complaints caused her to suffer adverse treatment. She does not offer oral or written statements or any other form of direct evidence.[3] Instead, she mainly relies on the temporal proximity of the complaints and

---

[3] Harris offers one written statement as evidence of the Postal Service's unlawful retaliation. That note, however, is not direct evidence of retaliation. The note read: "Deal with [Harris]. I am tired of [Harris'] whining and complaining. Provide me a copy of your written response. [Harris] needs to quit wasting everyone's time. You need to set up a written response to refute all [Harris'] allegations." (Ainsworth Dep. 23 (Ainsworth orally reading written note at deposition).) In her Opposition Brief, the Plaintiff maintains that this shows that Harris "was to be drummed out of the agency." The note's language implies no such intent, nor does it indicate retaliation. At worst, it expresses impatience with Harris's complaints, which Ainsworth apparently feels are groundless. Title VII prohibits a defendant
(continued...)

-5-

Case No. 5:05-cv-1611
Gwin, J.

the alleged adverse treatment, her personal speculation, and her subjective belief that she was more qualified than the employees whom the Postal Service chose to promote. Each of these approaches constitutes circumstantial evidence: therefore, the Court applies the *McDonnell Douglas* methodology.

To make out a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity under Title VII; (2) the defendant was aware of that activity; (3) the defendant took adverse employment action against the plaintiff; and (4) there exists a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for its actions. *Id.* at 793. If the defendant makes such a showing, the plaintiff must show that the nondiscriminatory reason is pretextual. *Id.*; *Johnston v. O'Neill*, 130 Fed. Appx. 1, 8 (6th Cir. 2005). The Court begins by considering the Plaintiff's prima facie case.

**A. Harris's Prima Facie Case**

Of the four required prima facie elements, the Defendant apparently disputes only the last two. The record is unclear regarding what the Plaintiff complained about, but the parties do not dispute that her complaints alleged some form of discriminatory treatment. Discrimination complaints are protected activity under Title VII. 42 U.S.C. § 2000e-3(a). In addition, the Defendant's responses to the complaints show that the Defendant knew of the complaints.

---

[3]/(...continued)
from retaliating against an employee for protected discrimination complaints; the employer is not required to agree with them. *See* 42 U.S.C. § 2000e-3(a)

-6-

Case No. 5:05-cv-1611
Gwin, J.

Therefore, the two remaining disputed elements of the Plaintiff's prima facie case are: (1) whether the Postal Service took adverse employment action against the Plaintiff; and (2) if there was an adverse employment action, whether the Plaintiff's protected activity *caused* that adverse action. The Court addresses these two issues in turn.

*1. Whether the Postal Service Took Adverse Employment Action Against Harris*

The Plaintiff makes two general allegations of adverse employment action. The first targets the Defendants' allocation of resources, promotion choices, and decisions regarding continued participation in succession programs. The second alleges constructive discharge.

First, the Plaintiff claims that the Defendant's (1) promoting other employees to positions that the Plaintiff applied for; (2) limiting the number of letter carriers at her disposal in Madison; and (3) terminating her participation in the succession program all constitute adverse employment actions.

An adverse employment action consists of a "materially adverse change" in employment conditions resulting from the employer's conduct, including "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices," but that are "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt. Corp.*, 97 F.3d 876, 886 (6th Cir. 1996).

As Plaintiff admits, she was never demoted or deprived of any material benefits or responsibilities during this period. She says that the Postal Service denied her numerous lateral transfers and promotions. Under Title VII, a failure to promote can be an adverse employment action. *Burlington Indus. v. Ellworth*, 524 U.S. 742, 761 (1998). However, not every failure to

-7-

Case No. 5:05-cv-1611
Gwin, J.

receive a promotion establishes an adverse employment action. *See Vredevelt v. GEO Group, Inc.*, 145 Fed. Appx. 122, 131 (6th Cir. 2005) (holding that "an inference of unlawful discrimination does not arise, as a matter of law, merely because an employer has chosen between two qualified candidates.") (citing *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 525 (Mich. 2001) (using Title VII analysis)). As Harris admits, the Postal Service gave the positions she sought to employees who were fully qualified. (Harris Dep. Vol. 2 87, 94-96.)

Harris says the Postal Service denied her promotion to four positions she sought in North Carolina in retaliation for her earlier complaints. However, to show this relation, Harris needs to show that the Postal Service officials who made the North Carolina decisions knew about Harris's earlier complaints. Harris testified that she had no evidence that the Cleveland office or someone from the Cleveland was involved in preventing Harris from getting the North Carolina jobs. (Harris Dep. Vol. 2, 10.) Instead, Harris just suspects there was some relation with the earlier complaints. Harris filed no EEO charges relating to the North Carolina positions. (Harris Dep. Vol. 2, 13.)

Harris's allegation that most closely approaches an adverse action is the Defendant's ending her participation in the succession program. However, the decision caused her little or no adversity, as the Postal Service placed her in the similar IDP program as an alternative.

In addition to the adverse conditions described above, the Plaintiff alleges her resignation was an adverse action because she was constructively discharged. Constructive discharge occurs when (1) the employer deliberately creates intolerable working conditions, either intentionally or foreseeably causing the employee to resign; and (2) a reasonable person in the employee's position would do the same. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001); *Moore v. KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999). An employer's decision not to promote a

-8-

Case No. 5:05-cv-1611
Gwin, J.

plaintiff to a position that the plaintiff believed she was entitled, without more evidence, does not establish a claim for constructive discharge. *Lindsay v. Pizza Hut of Am.*, 57 Fed. Appx. 648, 651 (6th Cir. 2003); *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996).

The Plaintiff essentially claims that the resource allocation decisions and denied promotions made her working environment intolerable. However, for essentially the same reasons as those just discussed, the Plaintiff's constructive discharge argument fails. She does not show a material change in her working environment, much less one that made the conditions intolerable.

First, the Plaintiff's allegations regarding her applications for transfer and promotion also do not establish constructive discharge. Here, as in *Lindsay*, the Court rejects the Plaintiff's claim that her employer's decision to promote another qualified employee to what the Plaintiff "perceives as [her] rightful position" creates an intolerable working environment. 57 Fed. Appx. at 651.

The constructive discharge argument also fails because the Plaintiff does not show any deliberate action calculated to force her resignation. Harris says that her resource shortage was more "dire" than for others. However, in her deposition, Harris also admitted that she communicated with only a few other postmasters. She also said she believed that in 2000, resources had become generally scarce for postmasters. (Harris. Dep. Vol. 1 83-86.) But the Plaintiff does not offer any evidence, other than her own belief, that her office was significantly more resource-deprived than others. As a result, she cannot show that the Postal Service's budget and staffing decisions were anything other than the result of systemwide resource shortage. She cannot show that the Defendant made those decisions to "deliberately create[] intolerable working conditions calculated to induce [her] to resign."

Case No. 5:05-cv-1611
Gwin, J.

In sum, none of the adverse conditions the Plaintiff cites are sufficient to constitute an adverse employment action under Title VII. Harris is thus unable to establish the third element of her prima facie case.

*2. Causation*

Even if the Postal Service had taken adverse employment action against Harris, she still must "adduce some evidence that the adverse action was taken at least in part *because* of" the protected activity. *Kinnard v. Rutherford Cty. Bd. of Ed.*, 109 Fed. Appx. 85, 93 (6th Cir. 2004) (emphasis added). She cannot do so. The Plaintiff alleges that impermissible considerations caused her supervisors not to recommend her for promotions, but she provides no direct knowledge or other information to support her suspicions. Her allegations of impermissible causation are speculative. Therefore, the Plaintiff does not establish the required connection between the Defendant's actions and her protected conduct.

The Plaintiff has failed to show an adverse employment action and failed to link any such action to her protected activity. The Plaintiff has therefore failed to establish a prima facie case of retaliation. As a result, her claim cannot succeed.

**B. Legitimate Non-Discriminatory Reasons for the Postal Service's Actions**

Even if the Plaintiff could establish a prima facie case, the Defendant rebuts each of the Plaintiff's claims with legitimate, nondiscriminatory reasons for each of its decisions. The Postal Service says that Harris received fewer resources than she had requested because the Postal Service had financial problems during that time period (and later time periods). Harris was denied transfer or promotion, it says, because other more qualified employees applied for the positions she sought. When the Postal Service terminated Harris's participation in the succession program, it offered her

Case No. 5:05-cv-1611
Gwin, J.

a similar opportunity with the IDP. To the extent that she did not benefit from the program, the Defendant claims that it was because Harris did not fully participate. (Sum. J. Mot. 4-7.) These explanations satisfy the Defendant's burden to provide a nondiscriminatory justification for any adverse employment actions.

**C. Pretext**

To avoid summary judgment, the Plaintiff must demonstrate that the Defendant's nondiscriminatory explanations are a pretext for discrimination. She can establish pretext by showing that the Postal Service's explanations either: (1) lack any basis in fact; (2) did not actually motivate the employment action; or (3) were insufficient to motivate the employment action. *Anthony v. BTR Auto. Sealing Sys, Inc.*, 339 F.3d 506, 516 (6th Cir. 2003). To meet this standard, the Plaintiff must provide sufficient direct or indirect evidence from which a jury could reasonably reject the Defendant's nondiscriminatory reasons. *Taylor v. Union Inst.*, 30 Fed. Appx. 443, 448 (6th Cir. 2002); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

Here, the Plaintiff provides no evidence to support her claims and bases her allegations mainly on vague suspicions. In contrast, the Defendant has provided ample evidence displaying valid, nondiscriminatory explanations for its actions. Accordingly, the Plaintiff has failed to establish pretext.

### IV. Conclusion

The Plaintiff cannot make out a prima facie case of retaliation, nor can she show that the Defendant's nondiscriminatory justifications are pretext for unlawful retaliation. Even when taking the facts in the light most favorable to the Plaintiff, no reasonable juror could determine otherwise.

Case No. 5:05-cv-1611
Gwin, J.

For these reasons and the reasons described above, the Defendants' Motion for Summary Judgment is **GRANTED**.

  IT IS SO ORDERED.


Dated: June 20, 2006           s/  *James S. Gwin*
                       JAMES S. GWIN
                       UNITED STATES DISTRICT JUDGE